527 F.2d 721
 13 P.U.R.4th 362, 5 Envtl. L. Rep. 20,708,
6 Envtl. L. Rep. 20,178
 ARIZONA POWER POOLING ASSOCIATION, an Arizona Corporation, Plaintiff-
Appellant, Arizona Power Authority, an agency of the State
of Arizona, et al., Intervenors,
v.
Rogers C. B. MORTON, Individually and as Secretary of the
Interior of theUnited States, et al., Defendants-Appellees.
 Nos. 74--1167, 74--1168, 74--1173.
 United States Court of Appeals,
Ninth Circuit.
 Sept. 24, 1975.
As Supplemented on Denial of Rehearing
and Rehearing En Banc in No.
74--1167 Dec. 17, 1975.
Certiorari Denied April 5, 1976,
See 96 S.Ct. 1506.
 
 Donald R. Allen (argued), Duncan, Allen & Mitchell, Washington, D.C., for plaintiff-appellant in 74--1167.
 Melvin Richter (argued), Washington, D.C., for appellant in 74--1168.
 George K. Fadel (argued), Bountiful, Utah, for appellant in 74--1173.
 Daniel I. Davidson (argued), Washington, D.C., for amicus curiae.
 Carl Strass (argued), Atty. for Dept. of Justice, Washington, D.C., for appellee.
 Daniel J. McAuliffe, Phoenix, Ariz. (argued), Arizona Public Service Co., Nevada Power Co. and So. Calif. Edison Co., for appellee.
 OPINION
 Before TUTTLE,* KOELSCH and BROWNING, Circuit Judges.
 TUTTLE, Circuit Judge.
 
 
 1
 This is an appeal from an order of the district court granting the government's motion for summary judgment and dismissing with prejudice an action which sought for the plaintiffs a preference right to bid for federally owned electric power. Appellant,[1] a non-profit Arizona corporation comprised of consumerowned utilities (the 'Association'),[2] brought suit in federal district court[3] to compel the Secretary of the Interior to negotiate with it for the purchase and sale of certain thermal power to which the government is entitled by virtue of its participation in the construction and operation of a thermal power plant in Arizona constituting part of the Colorado River Basin Project. The Association alleged that the Secretary had violated a duty imposed on him by federal reclamation laws requiring preference to be given to entities such as itself in the sale of federally-owned electric power. Also named as defendants were those private investor-owned utility companies with which the Secretary had contracted to sell the power at issue. The district court granted summary judgment for defendants, holding that the Secretary's decision with respect to which entities were to be allowed an opportunity to purchase thermal power was not judicially reviewable, and that Congress had approved any possible violation of the preference provision by accepting the Secretary's plan for the Central Arizona Project as submitted, and appropriating funds for its implementation.
 
 
 2
 We are unable to agree with the district court's decision, and consequently must reverse. First, we hold that the preference clause does apply to the sales of interim thermal power at issue, and that merely by appropriating funds for the Central Arizona Project, Congress cannot be deemed to have authorized any contravention of the preference clause so as to render the Secretary's actions unreviewable. Furthermore, we find that the Secretary's decision regarding which entities would be allowed to purchase interim power from the project was not one 'committed to agency discretion' within the meaning of the Administrative Procedure Act, and was therefore judicially reviewable.
 
 I. FACTUAL BACKGROUND
 
 3
 The Colorado River Basin Project Act, 43 U.S.C. § 1501 et seq., was passed by Congress in 1968 to develop the water resources of the Colorado River Basin. One of the Act's central components was the Central Arizona Project (CAP), 43 U.S.C. §§ 1521--28, which was designed to furnish irrigation and municipal water to water-deficient areas of Arizona and western New Mexico. To accomplish the objective of obtaining energy to lift water from the Colorado River to the level needed for irrigation, § 1523(a) authorized and directed the Secretary of the Interior:
 
 
 4
 'to continue to a conclusion appropriate engineering and economic studies and to recommend the most feasible plan for the construction and operation of hydroelectric generating and transmission facilities, the purchase of electrical energy, the purchase of entitlement to electrical plant capacity, or any combination thereof, including participation, operation, or construction by non-Federal entities, for the purpose of supplying the power requirements of the Central Arizona Project and augmenting the Lower Colorado River Basin Development Fund: Provided, That nothing in this section or in this Act contained shall be construed to authorize the study or construction of any dams on the main stream of the Colorado River between Hoover Dam and Glen Canyon Dam.' 43 U.S.C. § 1523(a).
 
 
 5
 The final proviso in this section was a result of conservationist opposition to additional dam sites along the river, and its inclusion virtually precluded the possibility of obtaining the needed energy from hydroelectric sources. Section 1523(b) was consequently added to permit the Secretary to obtain energy through agreements pertaining to thermal power sources, and to dispose of such energy when it was not needed for the CAP:
 
 
 6
 '(b) If included as a part of the recommended plan, the Secretary may enter into agreements with non-Federal interests proposing to construct thermal generating powerplants whereby the United States shall acquire the right to such portions of their capacity, including delivery of power and energy over appurtenant transmission facilities to mutually agreed upon delivery points, as he determines is required in connection with the operation of the Central Arizona Project. When not required for the Central Arizona Project, the power and energy acquired by such agreements may be disposed of intermittently by the Secretary for other purposes at such prices as he may determine, including its marketing in conjunction with the sale of power and energy from Federal powerplants in the Colorado River system so as to produce the greatest practicable amount of power and energy that can be sold at firm power and energy rates. . . .' 43 U.S.C. § 1523(b).
 
 
 7
 Pursuant to this statutory authorization, the Secretary entered into an agreement with certain public and private interests which were building a thermal generating power plant near Page, Arizona, known as the Navajo plant. The non-federal participants were the Salt River Project, the Los Angeles Department of Water and Power, the Arizona Public Service Company, Nevada Power Company, and Tucson Gas & Electric Company. By virtue of its participation in the construction of the Navajo project, the Bureau of Reclamation was to obtain an entitlement of 24.3% (561 megawatts) of the plant's power output, which would eventually be utilized for CAP purposes.
 
 
 8
 The Navajo plant, however, was scheduled to begin operation around 1974, whereas the CAP would not be operational, and hence would have no need of any of the Navajo power, until nearly 1980. Consequently, there existed a considerable amount of 'interim power' available from the Navajo project which the Secretary was authorized to market under § 1523(b).
 
 
 9
 In seeking to dispose of this interim power, it is undisputed that the Secretary refused to offer the Association the opportunity to become a purchaser, and contracted instead with those public and private interests involved in the construction of the thermal plant, together with Southern California Edison, another private investor-owned utility company.[4] The Secretary's choice of entities to which he offered the opportunity to purchase power was made despite a general provision in the Colorado River Basin Project Act, 43 U.S.C. § 1554, which states that '(e)xcept as otherwise provided in this Act, in constructing, operating, and maintaining the units of the projects herein and hereafter authorized, the Secretary shall be governed by the Federal reclamation laws (citations omitted) to which laws this Act shall be deemed a supplement.' The Federal Reclamation Project Act of 1939 contains a preference clause applying to any sale of electric power or lease of power privileges by the United States:
 
 
 10
 'Provided further, That in said sales or leases preference shall be given to municipalities and other public corporations or agencies; and also to cooperatives and other nonprofit organizations financed in whole or in part by loans made pursuant to the Rural Electrification Act of 1936. . . . No contract relating to municipal water supply or miscellaneous purposes or to electric power or power privileges shall be made unless, in the judgment of the Secretary, it will not impair the efficiency of the project for irrigation purposes.' 43 U.S.C. § 485h(c).
 
 
 11
 It is upon this provision and its incorporation into the Colorado River Basin Project Act by virtue of 43 U.S.C. § 1554 that appellant and intervenors, all of whom qualify as preference customers, base their claim that the Secretary violated his statutory duty by contracting to sell the interim power to the privately-owned utility companies without first offering the Association the opportunity to purchase it.
 
 
 12
 On September 30, 1969, pursuant to statutory requirement,[5] the Secretary submitted his recommended plan for obtaining energy for the CAP to Congress in a letter which outlined in detail the contractual arrangements involved in actually securing the thermal power necessary for the CAP. The only reference made to the existence and disposition of interim power, however, was a statement that Southern California Edison Company would be involved 'as a purchaser of a major portion of United States entitlement to generation and transmission prior to need for Central Arizona Project pumping.'[6] Congress approved the Secretary's plan as submitted, and has since continued to appropriate funds for the development of the CAP.[7]
 
 
 13
 In moving for summary judgment, defendants below made three arguments: first, that it was clear from the legislative history of the Colorado River Basin Project Act, as well as from the history of federal preference policy, that Congress never intended the preference clause to apply to the government's entitlement to thermal energy from the Navajo project; second, that even if the preference clause were found to be applicable, the development by the Secretary of the most feasible plan for securing and disposing of the power at issue was a decision 'committed to agency discretion' and not judicially reviewable under the Administrative Procedure Act, 5 U.S.C. § 500 et seq.; and finally, that congressional approval of the plan as submitted had the force of law, thereby rendering judicial review unavailable. On the basis of defendants' second and third arguments, the district court granted their motion for summary judgment, holding that 'Congress clearly committed the determination of the most feasible plan to the Secretary's discretion subject to congressional approval which was given repeatedly.'
 
 
 14
 Upon careful consideration of each of the issues involved, however, it appears that the district court erred in its decision, and for the reasons stated below
 
 
 15
 we hereby reverse and remand the case for further
 
 
 16
 proceedings. II. APPLICABILITY OF THE PREFERENCE
 
 CLAUSE TO FEDERAL SALES OF THERMAL POWER
 
 17
 Both of the grounds upon which the district court granted summary judgment for the defendants were based upon an assumption, but not upon an actual finding, that the preference clause applied to governmental sales of thermally-generated electric power. This threshold issue of the preference provision's applicability, while argued by both sides below, was never expressly decided by the district court. However, it presents only an issue of law which, for the sake of judicial economy, we dispose of on this appeal.
 
 
 18
 Defendants below made two main arguments against the applicability of the preference clause to the sales of interim power at issue here: first, that the legislative history of the Colorado River Basin Project Act clearly showed that Congress never intended for the preference provision to apply to sales of federallyowned thermal electric power, since the preference clause had never before been applied to sales of anything other than hydroelectric power. Second, defendants below argued that the phrase 'surplus power' as used in the Act meant power in excess of the government's needs for the Central Arizona Project, once the CAP plant commenced operations around 1980, but did not include in its definition power to which the government was entitled in the interim between completion of the thermal power plant and the time such power would be needed for irrigation purposes. Both of these arguments seem somewhat contrived in light of the clear language of the Act, and consequently we reject them. The preference clause has previously been applicable only in the context of sales of federally-owned hydroelectric power because prior to the Colorado River Basin Project Act the government had never been authorized to obtain rights to thermally-generated electric power. In drafting the CAP portion of the Act, however, Congress authorized federal participation in thermal electric projects, and clearly made all sales of any excess (including interim) power from such a porject subject to federal reclamation laws, including the preference clause. To read the statute otherwise would be to do violence to its
 
 
 19
 plain meaning. III. CONGRESSIONAL APPROVAL OF ANY VIOLATION
 
 OF THE PREFERENCE PROVISION
 
 20
 In its opinion, the district court relied heavily on the argument advanced by defendants below that by virtue of its annual appropriations for the Central Arizona Project Congress effectively 'approved' the disposition of interim power to non-preference customers and thus sanctioned any possible violation of the preference clause, rendering the issue unreviewable by the courts. Cf. Environmental Defense Fund v. Corps of Engineers, 492 F.2d 1123, 1145 (5 Cir. 1974). We cannot agree with this conclusion. Although it is undisputed that in passing the appropriation acts, Congress had before it various committee reports listing the six public and private entities which were to be involved as purchasers of interim power from the Navajo project, this fact in and of itself does not justify the inference of congressional approval of purchase negotiations that were allegedly conducted in violation of the preference clause. It is not the ultimate sale of the interim power to private interests which is alleged to be a violation of the preference clause, but rather the undisputed refusal of the federal appellees to offer appellant the opportunity to purchase the power prior to offering it to the private utility companies named as defendants below. There in nothing in the record to indicate that Congress was ever informed during any of the appropriation hearings, or by any of the reports submitted to it,[8] that the Association and other potential preference customers had sought, and had been refused, the chance to participate in the purchase of the government's entitlement to interim thermal power from the Navajo project.
 
 
 21
 Knowledge of the precise course of action alleged to have been acquiesced in is an essential prerequisite to a finding of ratification, cf. United States v. Beebe, 180 U.S. 343, 354, 21 S.Ct. 371, 45 L.Ed. 563 (1901); United States v. Georgia-Pacific Company, 421 F.2d 92, 102 n.8 (9 Cir. 1970), and the record before us does not support a finding of congressional knowledge of the course of sales negotiations for the interim Navajo project power sufficient to equate passage of the appropriations acts with ratification of the Secretary's actions in conducting those negotiations. It is thus clear that the district court erred in holding that by appropriating funds for the CAP Congress ratified any possible violation of the preference clause committed by the Secretary in the power sales negotiations and barred judicial review of his decision.
 
 
 22
 IV. REVIEW ABILITY OF THE SECRETARY'S ACTIONS UNDER THE APA
 
 
 23
 Appellees also advanced the argument, IV. REVIEWABILITY OF THE court, that, even assuming the applicability of the preference clause, in devising the 'most feasible plan' for obtaining electric power for the Central Arizona Project the Secretary had discretion so wide-ranging as to be free from judicial scrutiny under the Administrative Procedure Act, 5 U.S.C. § 701. The government sales of Navajo power, contended the appellees, were an integral part of this 'most feasible plan' and hence governed only the Secretary's judgment. For support they point to 43 U.S.C. § 1523(a) instructing the Secretary to devise the 'most feasible plan' and to the language of the preference clause itself, which states:
 
 
 24
 '. . . in said sales or leases preference shall be given to municipalities and other public corporations or agencies . . .. No contract relating to . . . electric power or power privileges shall be made unless, in the judgment of the Secretary, it will not impair the efficiency of the project for irrigation purposes.' 43 U.S.C. § 485h(c) (emphasis added).
 
 
 25
 This language, appellees contend, makes the availability of the preference dependent upon a discretionary determination by the Secretary as to the effect on project efficiency--a judgment so discretionary, they argue, as not to be subject to judicial review under the Administrative Procedure Act.
 
 
 26
 Careful examination of the statutes at issue and the case law in this area compels us to disagree with this argument.
 
 
 27
 The Administrative Procedure Act grants a right of judicial review to any person adversely affected or injured by agency action, 5 U.S.C. § 702, and provides that the judicial review provisions are applicable except in two particular situations: where a statute itself expressly precludes judicial review, or where 'agency action is committed to agency discretion by law.' 5 U.S.C. § 701(a). Since none of the statutes involved here expressly prohibits judicial review of the agency action at issue, the crucial question becomes whether the Secretary's decision with respect to the interim power sale negotiations was 'committed to agency discretion by law' within the meaning of § 701(a)(2). In undertaking this inquiry we must bear in mind that judicial reviewability of administrative action is the rule, and non-reviewability an exception which must be demonstrated, and which should result only from a showing of 'clear and convincing evidence' of a legislative intent to restrict judicial review. Barlow v. Collins, 397 U.S. 159, 166, 90 S.Ct. 832, 25 L.Ed.2d 192 (1969); Abbott Laboratories v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). As stated by the Supreme Court in Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 exception is a very narrow one[9] exception is a very narrow one$9 which is applicable only in 'those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply." 401 U.S. at 410, 91 S.Ct. at 821.
 
 
 28
 The language of 43 U.S.C. §§ 1523(a) and (b) authorizing the Secretary to devise 'the most feasible plan' for obtaining pumping power for the Central Arizona Project would seem to endow him with almost unlimited authority in orchestrating all phases of the project. By inserting § 1554 into the text of the Colorado River Basin Project Act, however, Congress circumscribed that discretion in at least one area by making his actions subject to the federal reclamation laws. Since we have determined (see Part II supra) that the preference clause is applicable to the power sales at issue here, we must examine its language to determine what degree of freedom the Secretary has in any given situation in deciding whether it must be applied.
 
 
 29
 The text of the preference provision is couched in mandatory terms, stating that 'preference shall be given' (emphasis added) to certain public entities in governmental sales or leases of electric power or power privileges. The section, however, concludes with a proviso that no sales contracts shall be made unless, 'in the judgment of the Secretary', they will not impair the efficiency of the project for irrigation purposes. Reading these two sentences together, it is clear that in marketing the interim power at issue the Secretary does not have unfettered discretion as argued by defendants below. The preference clause clearly calls for the Secretary to defer to the stated congressional objective of offering the government's excess power allotment to public entities first, subject only to considerations of overall project efficiency with respect to the ultimate goals of irrigation. The Secretary is thus given a very specific directive and a prohibition against making any contract, regardless of the public or private status of the other contracting entity, which would 'impair project efficiency'. Clearly he is not given total and absolute discretion as to whether or not to apply the preference clause in any given situation, regardless of the circumstances. Thus, given the preference clause's applicability to these interim power sales, there is 'law to apply' clearly evident on the face of the statute itself, and hence the exception appellees seek to invoke is unavailable. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1972); East Oakland-Fruitvale Planning Council v. Rumsfeld, 471 F.2d 524, 533--36 (9th Cir. 1972). By considering the complaint on the grounds discussed it is clear that the trial court did not review the legality and propriety of the Secretary's decision not to offer appellant the opportunity to purchase the interim power, under the guidelines and directives of congressional preference for 'public' purchases as limited by considerations of possible impairment of project efficiency as set out in § 485h(c). Overton Park, supra, 401 U.S. at 415--417, 91 S.Ct. 814. For example, defendants-appellees contend that as part of the 'most feasible plan' the Secretary determined that interim power should be sold only to those with an adequate back-up generating capacity and with an alternative means of transmitting energy. They argue that these requirements were necessary to avoid the possibility of cascading outages and equipment damage. On remand the district court will be required to determine whether the Secretary abused the limitations on his discretion by deciding that, because of these considerations, a disposition of the interim power to appellant and other excluded preference customers would have impaired the efficiency of the Central Arizona Project for irrigation purposes.
 
 
 30
 For the reasons stated above, the judgment of the district court is reversed and the case remanded for further proceedings not inconsistent with this opinion.
 
 
 31
 On Petition for Rehearing and Suggestion of Appropriateness of Rehearing En Banc of Arizona Public Service Company, Tucson Gas and Electric Company, Nevada Power Company, and Southern California Edison Company;
 
 
 32
 On Petition for Rehearing or Modification of Federal Appellees.
 
 PER CURIAM:
 
 33
 We consider it appropriate to make this modification to our opinion previously published in this case. We must, of course, consider this appeal in the posture in which it stands, which is an appeal from a summary judgment for the defendants, granted by the trial court on stated legal grounds.
 
 
 34
 In considering it we also take note of the issues posed by the parties in their respective briefs.
 
 
 35
 When we stated in the opinion that 'it is undisputed that the Secretary refused to offer the Association the opportunity to become a purchaser,' we probably should have stated 'on a motion for summary judgment we accept as true all allegations of fact pleaded by the party against whom the judgment is sought; therefore, we must accept as true the claim of the plaintiffs that the Secretary refused to offer the Association the opportunity to become a purchaser.'
 
 
 36
 Turning next to the issues that are presented on appeal, we note that the United States defendants urged only two bases for the granting of summary judgment. These two were contained in one paragraph entitled 'Summary of Argument:'
 
 
 37
 'The interim power which is the subject of this action was part of the initial acquisition of electric energy for the Navaho Project, and as such the disposition of this interim power was both committed to agency discretion and approved by Congress and thus not judicially cognizable.'
 
 
 38
 In granting this motion the trial court adopted the Government's grounds and argument. The Secretary argued that the provisions of 43 U.S.C. § 1523(a)[1] when coupled with § 1523(b)[2] gave wide-open discretion to the Secretary to consider as a part of the 'most feasible plan' for acquisition any plan 'to dispose' of unneeded power.
 
 
 39
 The Government then said that since the disposition of excess or lay-off power was part of 'the most feasible plan' whose confection was confided to the Secretary, this official's determination to dispose of the power without giving consideration to the preference customers was a discretionary act, and thus not reviewable.
 
 
 40
 The trial court accepted this argument, together with the argument that the plan had been approved by Congress through the passage of appropriation acts, the other part of the Government's argument.
 
 
 41
 The correctness of the trial court's action is therefore what, and all, that is before us.
 
 
 42
 We hold that the direction to the Secretary to recommend 'the most feasible plan' for acquiring power does not comprehend the right to sell excess power in a manner that is in conflict with the reclamation acts even though the Secretary may seek to denominate such sales as part of 'the most feasible plan' which he has otherwise authority to put into effect.
 
 
 43
 For the reasons which we have already stated we hold that the disposition of excess power is subject to the restrictions of 43 U.S.C. § 485h(c).[3]
 
 
 44
 Further, as we have stated in the opinion, we hold that there has been no modification or repeal of the preference statute as to this project by the enactment by Congress of subsequent appropriation acts.
 
 
 45
 Thus, we conclude that the trial court erred in its holding that the action of the Secretary was not reviewable for the reasons stated both in its opinion and the reasons advanced by the Government, the movant for the summary judgment.
 
 
 46
 Moreover, the United States defendants in their brief supporting the trial court's judgment again stated their argument in similar terms:
 
 
 47
 'I.
 
 
 48
 The Secretary of the Interior in 'the most feasible plan' submitted to Congress, properly exercised his discretion in offering the opportunity to purchase the Government's interim power entitlement only to those utilities which had adequate back-up capacity and transmission facilities.
 
 II.
 
 49
 Congress knowingly and repeatedly approved the Secretary's interpretation and administration of the Colorado River Basin Project Act in offering the Government's interim power entitlement to private as well as to preference utilities.'
 
 
 50
 It would seem, therefore, that neither the trial court nor this court has had presented to it a record which would permit it to decide anything more than the issues which we have outlined. As to these issues, we have concluded that the preference clause applies to the disposition of power from this thermal power plant notwithstanding the Government's contention that such disposition of excess power was part of the plan in the formation of which the Secretary was given broad discretion. This discretion was limited by the affirmative requirements that any such sale must be made under the limitations contained in the reclamation acts. Since we hold that the Secretary had no discretion to ignore the limitations of this act, the actions of the Secretary are thus not denied reviewability under the 'discretionary act exception.'
 
 
 51
 As noted in the opinion, the preference provisions in themselves contain a grant of discretion to the Secretary. This is contained in the sentence 'no contract relating to . . . electric power or power privileges shall be made unless, in the judgment of the Secretary, it will not impair the efficiency of the project for irrigation purposes.' 43 U.S.C. § 485h(c).
 
 
 52
 The record before us does not disclose, and the parties here do not contend, that the Secretary ever exercised his judgment with respect to this grant of discretion. This phase of the controversy is discussed only under the argument that the Secretary's power to make contracts for the sale of power was included within his power to recommend 'the most feasible plan' for the acquisition of power, a matter which we have already disposed of.
 
 
 53
 It is clear that under the terms of the preference clause neither the plaintiffs nor any other preference customer has an automatic entitlement to the excess power that will be available for disposition by the Secretary. We act only upon the record that is now before us, and in that posture of affairs we must accept as true the plaintiffs' allegations that as preference customers they have had no opportunity to compete for this surplus power. That allegation is denied by what amounts to a general denial in the answers filed by the defendants. Thus the issue remains open before the trial court, as do any other issues which have not been disposed of by what has now been said in this opinion as modified.
 
 
 54
 The judgment is reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.
 
 
 
 *
 Senior Circuit Judge Fifth Circuit Court of Appeals, sitting by designation
 
 
 [1]
 The district court granted leave to intervene as plaintiffs to the Arizona Power Authority, a state agency, Intermountain Consumer Power Association, a Utah corporation, and Bountiful, Utah, a municipal corporation. In addition, amici curiae briefs have been filed on appellant's and intervenors' behalf by Anaheim, Riverside, and Banning, California, municipalities which are currently involved in similar litigation in district court in the District of Columbia
 
 
 [2]
 Appellant's members are the Arizona Electric Power Cooperative; Electrical District Number Two, Pinal County, Arizona; and the City of Mesa, Arizona
 
 
 [3]
 The suit was originally filed in the District of Columbia but was later transferred to federal district court in Arizona
 
 
 [4]
 The Secretary contracted for disposition of its entitlement of 561 megawatts of interim power as follows:
 Salt River Project ............... 110 megawatts
City of Los Angeles ............... 75 megawatts
Arizona Public Service Company .... 17 megawatts
Tucson Gas & Electric .............. 9 megawatts
Nevada Power Company .............. 14 megawatts
Southern California Edison ....... 336 megawatts
 ----
 561 megawatts
 The last four entities do not qualify as preference customers under federal reclamation laws.
 
 
 [5]
 43 U.S.C. § 1523(c)
 
 
 [6]
 Letter from James R. Smith, Assistant Secretary of the Interior, to the President of the Senate, September 30, 1969
 
 
 [7]
 Act of December 11, 1969, P.L. 91--144, 83 Stat. 330; Act of October 7, 1970, P.L. 91--439, 84 Stat. 897
 
 
 [8]
 Two sentences in the Secretary's 1969 report to Congress mentioned that 'other parties' and the City of Anaheim, California and the Arizona Power Authority had an interest, but the report failed to specify the nature of that interest or that preference customers had been denied the right to bid. Letter from James R. Smith, Assistant Secretary of the Interior, supra note 6
 
 
 [9]
 The scope of this exception has been the subject of wide-ranging commentary and dispute. See, e.g., Berger, Administrative Arbitrariness: A Synthesis, 78 Yale L.J. 965 (1969); Saferstein, Nonreviewability: A Functional Analysis of 'Committed to Agency Discretion', 82 Harv.L.Rev. 367 (1968); Davis, Administrative Arbitrariness is Not Always Reviewable, 51 Minn.L.Rev. 643 (1967)
 
 
 [1]
 This section directed the Secretary 'to recommend the most feasible plan for the construction and operation of hydroelectric generating and transmission facilities, the purchase of electrical energy, the purchase of entitlement to electrical plant capacity . . . for the purpose of supplying the power requirements of the Central Arizona Project.'
 
 
 [2]
 This section provides that '. . . when not required for the Central Arizona Project, the power and energy acquired by such agreements may be disposed of intermittently by the Secretary for other purposes at such prices as he may determine . . .'
 
 
 [3]
 This section provides: '. . . in said sales or leases preference shall be given to municipalities and other public corporations or agencies . . .. No contract relating to . . . electric power or power privileges shall be made unless, in the judgment of the Secretary, it will not impair the efficiency of the project for irrigation purposes.'