**NORTHROP UNIVERSITY, Plaintiff,**

v.

**Edwin L. HARPER, et al., Defendants.**

**No. CV–83–1941–MML.**

United States District Court,
C.D. California.

July 18, 1983.

---

* No. 82–6080, decided July 6, 1983.

Rebecca A. Donnellan, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., John P. Doyle, Asst. U.S. Atty., Los Angeles, Cal., for defendants.

Thomas L. Taylor, III, Bushkin, Gaims & Gaines, Los Angeles, Cal., for plaintiff.

ORDER GRANTING DEFENDANTS' MO-
TION TO DISMISS AND DISMISS-
ING COMPLAINT WITH LEAVE TO
AMEND CERTAIN CLAIMS

LUCAS, District Judge.

Plaintiff's motion for a preliminary injunction and defendants' motion to dismiss came on for hearing before the Court, the Honorable Malcolm M. Lucas, District Judge, presiding, on May 16, 1983. After careful consideration of the papers filed the Court grants defendants' motion to dismiss and denies plaintiff's motion for preliminary injunctive relief.

This litigation concerns the proposed sale of certain surplus property owned by the United States. The property at issue, known as Building 300, is a 1.15 acre lot in Los Angeles which has been improved by a two story office building. This property is one of three neighboring parcels all of which were originally owned and used by the United States. The other two parcels are known as buildings 301 and 302 respectively. In order to understand the dispute underlying this litigation it is necessary to describe briefly the statutory framework for the disposition of surplus federal property.

The Federal Property and Administrative Services Act of 1949, 40 U.S.C. § 471, *et seq.* ("FPASA"), and the regulations promulgated thereunder, govern the disposition of surplus federal property. 40 U.S.C. § 484 provides that the Administrator of General Services "shall have supervision and direction over the disposition of surplus property of the United States." 40 U.S.C. § 484(c) permits any executive agency which has been designated or authorized by the Administrator to dispose of surplus property to do so "by sale, exchange, lease, permit or transfer, for cash, credit or other property, with or without warranty, and upon such other terms and conditions as the Administrator deems proper ...." 40 U.S.C. § 484(e)(1) and (2) provide that in the usual case, all disposals or contracts for disposal of surplus property be made "after publicly advertising for bids" and the award shall be made to the responsible bidder whose bid is "most advantageous to the Government, price and other factors considered."

Several exceptions to this procedure are also provided for in 40 U.S.C. § 484. For example, even where publicly advertised bids are solicited, the administrator may reject all bids if it is in the public interest to do so. 40 U.S.C. § 484(e)(2)(C). Other subsections under 40 U.S.C. § 484(e) also permit the Administrator to dispose of property without publicly advertising for bids under certain circumstances. For example, 40 U.S.C. § 484(j) permits the Administrator to donate surplus property to the states, territories and possessions for educational, public health, or other purposes. 40 U.S.C. § 484(*l*) permits donation of surplus property to the American Red Cross.

In addition to these and other provisions for the disposition of surplus property, the FPASA also permits the Administrator, in his discretion, to dispose of surplus real property, including buildings, to non-profit educational institutions through the Secretary of Health and Human Services.[1] 40 U.S.C. § 484(k); 45 C.F.R. § 12. Such dispositions are referred to as "public benefit discount conveyances." The statute provides that such dispositions are to be made "under such regulations as [the Administrator] may prescribe."

40 U.S.C. § 486(a) gives the President broad authority to prescribe policies and directives to effectuate the provisions of the FPASA.[2] On February 25, 1982 Presi-

---

1. Formerly the Secretary of Health, Education and Welfare. *See* 20 U.S.C. § 3508.

2. 40 U.S.C. § 486(a) provides: The President may prescribe such policies and directives, not

dent Reagan issued Executive Order 12348 which established a Property Review Board to oversee a comprehensive new program for the disposition of surplus property. The Property Review Board's guidelines addressed, in particular, the disposition of surplus property under the public benefit discount conveyance provisions of the FPA-SA. The new guidelines provided that, as a rule, property will be conveyed only at fair market value in the future. Three specific exceptions to this rule were provided. Surplus property could be conveyed at below fair market value if

(1) the property is to be used as a correctional facility;

(2) the application for the public benefit discount conveyance was submitted prior to March 1, 1982 and disapproval of the proposed conveyance would cause an extreme hardship on the state or local community; or

(3) the application for discount conveyance has exceptional merit and the proposed use of the property represents its highest and best use.

In 1977, Buildings 301 and 302 were transferred to plaintiff, Northrop University ("Northrop"), a non-profit educational institution, under the public benefit discount conveyance provisions of the FPASA. Because parking in the area is limited Northrop also had a strong interest in using Building 300's parking lot and in obtaining access to other parking facilities which could best be reached by entering onto Building 300's lot. In June of 1978 Northrop obtained from the United States Air Force, which was then using Building 300, an easement to use the building's parking lot and an access easement to the additional parking area(s).[3] This easement was

granted for a period of five years. It has now expired.

In July of 1982 the United States Air Force determined that it no longer needed Building 300. It reported the building as excess property to the General Services Administration (GSA). GSA thereafter screened the property to determine whether it could be used by other federal agencies. After determining that there was no such alternate use for the property, GSA declared the property to be surplus.

Beginning in the fall of 1982 Northrop began efforts to acquire Building 300 and/or the access easements under the public benefit discount conveyance provisions of the FPASA. First, Northrop wrote to GSA requesting that the property be conveyed to it under this program. On October 28, 1982 GSA responded to this letter, informing Northrop that, in light of directives set forth in Executive Order 12348, the interests of the nation would be best served if the property were offered for sale to the public by means of a sealed bid public sale. Thereafter, Northrop asked the Department of Education to write to GSA with a request that GSA "reconsider its determination that the property is only available for sale." The Department of Education made such a request. GSA did not change its determination.

GSA arranged for the sale of Building 300 by public auction on March 31, 1983. On March 30, 1983 plaintiff filed this action and sought a temporary restraining order to stop the planned auction. The Honorable William P. Gray heard plaintiff's application in this Court's absence. He held that because the balance of harm tipped sharply in favor of plaintiff, a temporary restraining order should issue to maintain

inconsistent with the provisions of this Act, as he shall deem necessary to effectuate the provisions of this Act, which policies and directives shall govern the Administrator and executive agencies in carrying out their respective functions hereunder.

**3.** There is some disparity in the papers as to the scope of this access easement. The contract (plaintiff's exhibit H) appears to provide only

for a right to use Building 300's parking lot and to enter the driveway belonging to Building 300 to reach a parking lot between Buildings 301 and 302. At points in the papers, however, and at oral argument, plaintiff alleged that the easement also provided access to other land, leased from a third party, which was also used for parking.

the status quo pending a more thorough hearing before this Court. He orally so ordered. In lieu of a formal written order, the parties subsequently reached a stipulated agreement as to what action would be permitted pending the hearing of plaintiff's motion for a preliminary injunction. Defendants then noticed the present motion to dismiss to be heard together with plaintiff's motion. Against this background the Court turns to the present motions.

The complaint in this action purports to state eight claims for relief. At oral argument, however, plaintiff conceded that the first claim for relief, a claim under the Land and Water Conservation Fund Act, was not viable. Plaintiff voluntarily dismissed this claim for relief. Of the remaining seven claims, it is useful to discuss claims two, three and five together. Similarly, claims six and seven may be treated together. Claims four and eight will be discussed separately.

Plaintiff's second and third claims for relief are captioned as claims for "violation of the FPASA." In claim two plaintiff alleges that the "new policy ... of only accepting the highest bid or fair market value for land" violates the FPASA "which requires consideration of various public policy factors by the GSA in determining to whom surplus federal property should be transferred." (Complaint, page 19, lines 4–11.) Claim three appears to be little more than a restatement of claim two. In this claim for relief plaintiff alleges that GSA's policy "of uniformly refusing to convey properties to state and local governments and other eligible groups at below market value costs violates the FPASA." (Complaint, page 19, lines 24–28.)

■■■ These two claims, cannot, however, be viewed as claims arising directly under the FPASA. The statute does not provide for such private enforcement actions. At best, plaintiff's allegations in this regard might be viewed as raising a claim under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA"). In particular, these claims could be viewed as claims that defendants acted in violation of law. *See* 5 U.S.C. § 706. Any such claim must fail, however, in that it is clear that defendants did not violate any provision of the FPASA, plaintiff's conclusory allegations to the contrary are not supported by the language of the statute. There is no affirmative requirement in the FPASA which requires consideration of various policy factors in determining how to dispose of surplus property.

However, plaintiff may not have intended these claims to be understood as claims arising directly under the FPASA or as APA claims for agency action "contrary to law." In both the second and third claims for relief plaintiff also alleges that defendants' conduct "constitutes an abuse of discretion." This, too, may provide the basis for a claim under the APA. *See* 5 U.S.C. § 706. It appears from these allegations in the complaint and from plaintiff's papers filed with respect to the present motions that the gravamen of these two claims for relief is that defendants' failure to consider or grant Northrop's request may be challenged under the APA as an "abuse of discretion." So construed, these claims must be considered together with the fifth claim for relief.

■■■ Plaintiff's fifth claim for relief is specifically captioned as a claim arising under the APA.[4] Again, however, plaintiff alleges both that defendants have violated the applicable law (in this case the Property Review Board's guidelines) and that defendants' conduct in refusing to review Northrop's proposal for acquisition of Building 300 in light of the applicable guidelines, "is an abuse of statutory discretion." As in the case of plaintiff's second and third claims for relief the first of these two allegations must be rejected. There can be no serious argument that defend-

---

**4.** The fourth claim for relief is also a claim under the APA. However, the fourth claim is based upon allegations that defendants failed to comply with the provisions of the APA regard-

ing rule-making, 5 U.S.C. § 553, and should, thus, be discussed separately from plaintiff's "abuse of discretion" claims under 5 U.S.C. § 706.

ants violated their own guidelines in declining to convey the property to Northrop.[5]

Although plaintiff's complaint does not clearly articulate the basis for its second, third and fifth claims for relief, it appears that the "gravamen" of all three claims for relief is that defendants abused their discretion by establishing and carrying out the new policy "of single-mindedly committing all surplus federal property to public sale for the purpose of reducing the national debt." (*See* Reply Memorandum of Northrop University In Support of Its Motion for Preliminary Injunction and In Opposition to the Defendants' Motion to Dismiss, page 5, line 4–7.) It is clear, however, that plaintiff is not entitled to relief under this theory.

5 U.S.C. § 701(a)(2) specifically limits the scope of judicial review under the APA. No review is available if the agency action is "committed to agency discretion by law." Although this limitation is an extremely narrow one, it is applicable in the present case.

Judicial review of agency action is precluded in "those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 403, 410, 91 S.Ct. 814, 817, 820, 28 L.Ed.2d 136 (1971); *Arizona Power Pooling Association v. Morton*, 527 F.2d 721, 727 (9th Cir.1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976). This is one of these rare cases.

■ The FPASA does not limit the president in promulgating policies and directives with respect to the distribution of surplus property except to require that the President's policies and directives be "consistent" with the FPASA. 40 U.S.C. § 486(a). Executive Order 12348 and the policies adopted by the Property Review Board are consistent with the FPASA. These new guidelines do not prohibit public benefit discount conveyances. They simply limit the scope of such conveyances and provide specific guidelines for deciding when such a conveyance should be made. As defendants' note in their papers, Congress intended that public benefit discount conveyances would be made "sparingly". *See* H.R. 1763, 85th Cong., 2d Sess., *reprinted in* [1958] U.S.Code Cong. & Admin.News, 2861, 2866. To the extent plaintiff seeks review of the action of the Property Review Board in formulating specific guidelines, it is clear that plaintiff is entitled to no relief. Beyond determining whether or not the new guidelines are "consistent" with the statute, the court has no power to conduct such review.

■ The FPASA also confers unfettered discretion upon the Administrator to dispose of surplus property. To be sure, the Administrator is bound by the President's Executive Order 12348 and by the guidelines established by the Property Review Board. However, plaintiff was not entitled to conveyance of Building 300 under the new policies and directives. GSA was aware of Northrop's interest in Building 300 and knew what interests would be served by a public benefit discount conveyance to Northrop. Nevertheless GSA determined that in light of the President's directive and the policies adopted by the Property Review Board the best interests

---

**5.** Plaintiff apparently takes the position that it was entitled to conveyance of Building 300 under the second exception to the new policy of limited public benefit discount conveyances (for conveyances begun prior to March 1, 1982) (see Complaint, page 6, lines 18–24 and page 22, lines 10–13). Such an argument is clearly without merit. Building 300 was not declared surplus property until months after the March 1, 1982 deadline had passed. Plaintiff does not explain why it should be entitled to consideration under this exception.

It also appears from some of the depositions reviewed by the Court that plaintiff believes that Building 300 should have been conveyed under the third exception, that is, as a case of exceptional merit where the proposed use represents its highest and best use. No such argument is articulated in the papers, however. Furthermore, it is difficult to understand how the refusal to convey Building 300 to plaintiff, which was predicated on a determination that the highest and best use was through public sale, could constitute a violation of defendants' own guidelines as alleged.

of the nation would be served by a closed bid public sale of the property. This decision is vested in the complete discretion of the Administrator and cannot be reviewed by this Court. Thus, plaintiff's second, third, and fifth claims for relief must be dismissed with prejudice.

Plaintiff's fourth claim for relief arises under a different provision of the APA. Plaintiff alleges that the change in policy created by the issuance of Executive Order 12348 and the creation of the Property Review Board constituted "agency rule-making" within the meaning of the APA. Plaintiff argues that, as such, the new policy is void in that the APA notice and comment requirements were not followed. 5 U.S.C. § 553.

■ Defendants argue, that 5 U.S.C. § 553 exempts all matters relating to public property from the APA's rule making provisions. Plaintiff suggests no reason why this exemption should not operate to defeat its fourth claim for relief. It appears to the Court that, pursuant to 5 U.S.C. § 553(a)(2), defendants were not required to comply with the rule making provisions of the APA in adopting new guidelines for the disposition of surplus property. For this reason, and in light of the fact that plaintiff makes no argument to the contrary, the Court dismisses this claim for relief with prejudice.

Plaintiff's sixth and seventh claims for relief are captioned "breach of implied contract—promissory estoppel." Plaintiff alleges in the sixth claim that defendants, through their conduct, "impliedly represented" to Northrop that Building 300 would "be available for conveyance to Northrop [as a public benefit discount conveyance]" when it became surplus property. Plaintiff alleges in the seventh claim that defendants, through their conduct, "impliedly represented" to Northrop that any conveyance of Building 300 to a third party would be subject to an easement in favor of plaintiff for use of the building's parking lot and for access across the lot to other parking facilities. In both claims for relief plaintiff alleges that it invested $1 million in renovating Buildings 301 and 302 in reliance on these promises. Plaintiff asks the Court to order specific performance of these alleged implied contracts.

■ There are several problems with these two claims for relief. First, it appears that plaintiff has not named the proper party as a defendant. This is, in essence, a contract claim against the United States. As such, the United States should be named as the defendant. Plaintiff has, rather, named the Administrator of the General Services Administration and the chairperson of the Federal Property Review Board as defendants. Second, as defendants correctly note, there is a serious question as to this court's jurisdiction over these claims. This is, in essence, a contract claim against the United States. The amount in controversy exceeds $10,000. Plaintiff suggests in its papers that such a claim is within the Court's jurisdiction under 28 U.S.C. § 1331. This argument is without merit. Closely related to this point, defendants contend that this action is barred by sovereign immunity. Plaintiff cites no authority for the proposition that the United States has waived its sovereign immunity for claims such as the ones raised here. Most importantly, however, defendants correctly argue that plaintiff has failed to allege facts sufficient to state a claim for promissory estoppel against the government in this case. In particular, plaintiff has not alleged that the agent of the United States who allegedly made the false representation concerning Building 300 had the actual authority to bind the federal government.

Plaintiff argues that this aspect of defendants' motion is, in essence, a motion for summary judgment in that factual issues must be resolved. The Court disagrees. Plaintiff has clearly failed to *allege* facts sufficient to state a claim for specific performance based upon a promissory estoppel theory, either as to Building 300 or as to the easements. Thus, the claim should be dismissed for failure to state a claim. F.R.Civ.P. 12(b)(6). A dismissal for failure to state a claim should, however, be

without prejudice unless it is clear that plaintiff will not be able to allege facts sufficient to state a claim.

Defendants contend that plaintiff will not be able to allege such facts. Although it appears that defendants may well be correct,[6] the Court finds it appropriate to grant plaintiff an opportunity to amend the complaint.

▮ The Court turns now to plaintiff's eighth claim for relief. This claim is captioned "Declaratory Relief—Easement by Strict Necessity." Defendants argue that plaintiff has not alleged and cannot allege facts sufficient to establish that it is entitled to an easement by strict necessity in this case. Plaintiff at no point raises any argument to the contrary. Insomuch as it appears to the Court that plaintiff cannot possibly allege facts sufficient to support this claim for relief and in light of plaintiff's silence on this issue, the Court dismisses this claim with prejudice.

In sum, the complaint in this case must be dismissed. Plaintiff has voluntarily withdrawn its first claim for relief. The second, third and fifth claims for relief must be dismissed with prejudice for the reasons set forth in this order. Claim four must also be dismissed with prejudice. The establishment of new guidelines for the disposition of surplus public property does not constitute agency rulemaking as that term is defined in the APA. Plaintiff's sixth and seventh claims for relief must be dismissed for failure to state a claim for relief. However, because it is not

entirely clear that plaintiff could not allege facts sufficient to state a claim if given leave to amend, this dismissal is without prejudice. The Court grants plaintiff ten days leave to file an amended complaint setting forth its breach of contract claims.[7] If no amended complaint is filed within ten days the dismissal will be deemed to be with prejudice. Plaintiff's eighth claim for relief must be dismissed with prejudice. Defendant argues that plaintiff has failed to allege facts sufficient to state a claim for declaratory relief that it is entitled to an easement by strict necessity. It is clear that such facts cannot be alleged. Plaintiff has raised no objection to defendants' argument in this regard.

Plaintiff's motion for preliminary injunctive relief is denied. As indicated, plaintiff has little likelihood of ultimately prevailing on the merits in this litigation. Thus, injunctive relief is not warranted.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve, by United States mail, copies of this Order on counsel for the parties in this matter.

---

**6.** Indeed, plaintiff's president testified at his deposition on April 17, 1983 that when Buildings 301 and 302 were conveyed in 1977 "nobody promised anybody anything [with respect to Building 300] because they couldn't." Deposition of B.J. Shell from April 19, 1983, p. 18, lines 24–25. Plaintiff apparently places some importance on the deposition testimony of Mr. Howard Ours, a GSA employee. Mr. Ours testified at his May 6, 1983 deposition that GSA told Northrop in late 1982 that GSA would provide for an easement in the bid document prepared for the public sale of Building 300 and that the failure to do so was a "mistake." There is, however, nothing in Mr. Our's deposition that suggests that GSA intended to provide for such an easement because it was legally obligated to

do so. Such testimony concerning statements made in 1982 lends little if any support to plaintiff's contention that it is entitled to recovery under a theory of promissory estoppel based upon plaintiff's efforts to improve buildings 301 and 302 several years earlier.

**7.** The Court notes that in addition to alleging facts sufficient to support one or both of these claims for relief plaintiff must include a statement of the grounds upon which the Court's jurisdiction depends. F.R.Civ.P. 8(a). As indicated, there is a serious question as to whether plaintiff may maintain these "contract" claims against these defendants and/or in this court.