COLORADO RIVER ENERGY DISTRIB-
UTORS ASSOCIATION, A Non-Profit
Colorado Membership Corporation,

and

Provo City, Utah, A Political Subdivision
of the State of Utah, Plaintiffs,

v.

William LEWIS, As Acting Secretary of
the Department of Energy,

and

Ruth M. Davis, As Assistant Secretary of
Energy For Resource Applications,
Defendants.

Civ. A. No. 81–0163.

United States District Court,
District of Columbia.

March 20, 1981.

Donald R. Allen, Glen L. Ortman, David Yafee, Duncan, Allen & Mitchell, Washington, D. C., for plaintiffs.

Barbara S. Woodall, Dept. of Justice, Washington, D. C., for defendants.

OPINION

BARRINGTON D. PARKER, District Judge.

Plaintiffs, Colorado River Energy Distributors Association (CREDA) and Provo City, Utah (Provo) have brought this action against the Secretary of Energy and the Assistant Secretary for Resource Applications seeking a declaratory judgment that defendants do not have the authority to implement and collect, on an interim basis, proposed rate increases for electric power sold by defendants to plaintiff CREDA's members. This case is presently before the

Court on plaintiffs' motion for a preliminary injunction enjoining the Department of Energy (DOE) from placing into effect an interim rate increase for electric power from the hydroelectric generating facilities of the Colorado River Storage Project (CRSP). Plaintiffs argue that no proposed rates may take effect unless and until they have first been approved by the Federal Energy Regulatory ` Commission (FERC). After considering the parties memoranda and oral argument, the Court concludes that the plaintiffs' motion for a preliminary injunction should be denied. The Court's findings of fact and conclusions of law are set out below.

## BACKGROUND

CREDA is a non-profit Colorado membership corporation comprised of seventeen publicly-owned electric utility systems, organizations of publicly-owned electric utility systems and state and federal agencies which provide wholesale electric service. CREDA's members are either electric utilities or associations of electric utilities located in the Colorado River Basin states of Arizona, Colorado, Nevada, New Mexico, Utah and Wyoming. Provo is a political subdivision of the State of Utah and a CREDA member. Under the federal reclamation laws those CREDA members and their customers which are electric utilities qualify for preference in the purchase of electric power produced by CRSP hydroelectric facilities. CREDA's members purchase approximately 90 percent of the power produced by CRSP. Defendant William Lewis was named in his official capacity as Acting Secretary of the Department of Energy. The Secretary is responsible for the operation of the DOE, which includes management of the Western Area Power Administration (WAPA), a distinct organizational entity within DOE. Defendant Ruth M. Davis, named in her official capacity as the Assistant Secretary of Energy for Resource Applications, was delegated the responsibility for the formulation, approval and implementation of rates charged for CRSP power marketed by WAPA.[1]

The Western Area Power Administration was created as an agency within the Department of Energy by the Department of Energy Organization Act of 1977, 42 U.S.C. §§ 7101, 7152(a)(3) (DOE Act). WAPA is responsible for the marketing of electric power generated at 47 federal hydroelectric power plants and one coal-fired plant to over 450 power customers in 15 western states. By statute, revenues from the sale of energy generated at hydroelectric plants in the Colorado River Storage Project must be sufficient to pay the Project's annual operating and maintenance expenses, and, in addition, must provide for a return to the Treasury of the costs of each power unit within the project within fifty years. 43 U.S.C. § 620d(d)(1).

The Twenty-First Annual Report of the Colorado River Storage Project, submitted to Congress as required by 43 U.S.C. § 620e, contained a repayment study which showed that the then-existing (1977) power rates would be sufficient to pay annual operating and maintenance expenses, but would not repay the power investment and irrigation assistance costs within the statutory time frames. WAPA tentatively found that a rate increase of forty-three percent was necessary to provide the required revenue, and publicly proposed such an increase at a customer meeting on March 5, 1978.

Following a series of public meetings with customer representatives and the receipt of written comments, WAPA reduced the rate increase to twenty and one-half percent. This increase was approved on an interim basis by the Assistant Secretary for Resource Applications, in accordance with the Delegation Order, on December 23, 1980. The announcement of the interim rates also advised WAPA customers that the new rates would become effective on January 23, 1981, and restated DOE's intention to refund any overcharges with inter-

1. Delegation Order No. 0204–33, 43 Fed.Reg. 60636 (December 21, 1978); 45 Fed.Reg. 86976, 86986 (December 31, 1980).

est. 45 Fed.Reg. 86988 (December 28, 1980).

## LEGAL ANALYSIS

Until 1977, the Department of the Interior's Bureau of Reclamation managed the CRSP. Power marketing by the Bureau of Reclamation in the Colorado River Basin was governed by the Reclamation Act of 1902, 43 U.S.C. § 372 *et seq.*, the Reclamation Project Act of 1939, 43 U.S.C. § 485 *et seq.*, and the Colorado River Storage Project Act of 1956, 43 U.S.C. § 620 *et seq.*

Section 9(c) of the Reclamation Project Act of 1939 gave the following authority to set rates to the Secretary of the Interior:

> Any sale of electrical power or lease of power privileges, made by the Secretary in connection with the operation of any project or division of a project, shall be for such periods, not to exceed forty years, and at such rates as in his judgment will produce power revenues at least sufficient to cover an appropriate share of the annual operation and maintenance cost, interest on an appropriate share of the construction investment at not less than 3 per centum per annum, and such other fixed charges as the Secretary deems proper :. . . " 43 U.S.C. § 485h(c).

In 1977 the Bureau of Reclamation's power marketing functions were transferred to the Secretary of Energy, acting through a new power marketing administration under section 302(a)(1) & (3) of the DOE Act. 42 U.S.C. § 7152(a)(1) & (3). The Act established WAPA as the new power marketing administration. The DOE Act did not change the standards set by the Reclamation Project Act of 1939 relating to the marketing of CRSP power under section 9(c).

The DOE Act also granted the Secretary the power to delegate "any of his functions to such officers and employees of the Department as he may designate." 42 U.S.C. § 7252. Exercising this authority, the Secretary issued Delegation Order No. 0204–33,[2] which gave to the Assistant Secretary for Resource Applications, acting through the five power marketing administrations of DOE, including WAPA, the authority to formulate rates for the sale of power sold by each power marketing administration. The Delegation Order also provided that the Assistant Secretary approve and implement rates formulated by the power marketing administrations on an interim basis. Authority to confirm and approve the interim rates was delegated to the Federal Energy Regulatory Commission. The Delegation Order also authorized the repayment of any difference between the interim rates collected and a lower rate confirmed by the FERC as a refund with interest to the affected power marketing administration customers. The provisions of the Delegation Order have since been embodied in Department of Energy regulations which became effective December 31, 1980.[3] WAPA subsequently amended its ratemaking procedures to comport with the Delegation Order. 44 Fed.Reg. 7796 (February 7, 1979). Under these procedures, WAPA now formulates and recommends proposed rate changes for CRSP power to the Assistant Secretary after the public has had an opportunity to submit comments on the proposed rate changes.

Plaintiffs argue that the implementation and collection of interim rates is unlawful for four separate reasons:

1) Defendants have no express or inherent authority to implement WAPA's proposed rate increases before final confirmation and approval by the FERC;

2) The implementation of WAPA's proposed rate increase on an interim basis violates the Administrative Procedure Act, 5 U.S.C. § 553 (APA);

3) Defendants are not authorized to refund the increased rates if such rates are not ultimately approved by the FERC; and,

---

**2.** 43 Fed.Reg. 60636 (December 21, 1978).

**3.** 45 Fed.Reg. 86976 (December 31, 1980).

4) Defendants are not authorized to pay interest on any refunds if the increased rates are not ultimately approved by the FERC.

■ In support of their motion for a preliminary injunction, CREDA and Provo contend that the proposed rate increase will cost CREDA members, including Provo, approximately $18,600 per day. Plaintiffs argue they will be irreparably injured if the proposed rate increase is not enjoined in that 1) defendants cannot refund the increased rates if the increase ultimately is disapproved by the FERC, and 2) even assuming defendants can make such refunds, defendants cannot pay interest on them. The requirements for a preliminary injunction were outlined in *Virginia Petroleum Jobbers Association v. Federal Power Commission*, 259 F.2d 921 (D.C.Cir.1958):

> (1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal? ... (2) Has the petitioner shown that without such relief, it will be irreparably injured? ... (3) Would the issuance of a stay substantially harm other parties interested in the proceedings? ... (4) Where lies the public interest? ...

259 F.2d at 925. When the other three factors favor preliminary relief, a plaintiff may prevail at the preliminary stage by showing a "substantial" case on the merits. *WMATA v. Holiday Tours*, 559 F.2d 841, 843 (D.C.Cir.1977). Since plaintiffs have failed to meet the first requirement, their motion for a preliminary injunction will be denied.

■ Plaintiffs' APA claim may be disposed of quickly. The Secretary's price-setting function has been made subject to 5 U.S.C. § 553's notice and comment requirements by the DOE Act. 42 U.S.C. § 7191(b)(3). Defendants, however, have complied with these requirements. The record reveals that the rates, as initially proposed by WAPA, were announced in the Federal Register and presented at public meetings. Comments were solicited, and after review, new, lower rates were proposed. These rates were also the subject of public meetings and written comments from WAPA customers.[4] In the absence of more explicit procedural requirements in the DOE Act itself, the procedures observed in this case satisfy section 553. *See United States v. Florida East Coast Railway Co.*, 410 U.S. 224, 240–42, 93 S.Ct. 810, 818–19, 35 L.Ed.2d 223 (1973). Plaintiffs' argument that putting the interim rates into effect before FERC review "jumps the gun" in violation of the APA, assumes a conclusion that plaintiffs must demonstrate elsewhere: that the Secretary does not have the power to set interim rates in the first place.

Plaintiffs' remaining arguments all attack the Secretary's ability to issue the Delegation Order providing for the collection of interim rates. Section 9(c) of the Reclamation Act of 1939, according to plaintiffs, allows defendants to establish "a lawful price" for CRSP power; it "does not and cannot by any stretch of the imagination, include the power to collect unlawful rates on an interim basis."[5]

■ Aside from "jumping the gun" on the FERC proceeding in assuming the rates to be unlawful, plaintiffs are too restrictive in their view of the Secretary's power under 9(c). That section grants the Secretary complete power over ratemaking and provides sufficient authority to sustain the interim rate system first established by the Delegation Order.

■ Explicit statutory authority to set interim rates is not required. The Supreme Court has found the power to allow interim rates to become effective, subject to refunds, to be implicit in a general provision authorizing an agency to issue rate orders. *Federal Power Commission v. Tennessee Gas Co.*, 371 U.S. 145, 150–52, 83 S.Ct. 211, 214–15, 9 L.Ed.2d 199 (1962); *Federal Power Commission v. Natural Gas Pipeline Co.*, 315 U.S. 575, 583–84, 62 S.Ct. 736, 741–42, 86 L.Ed. 1037 (1942) (sections 5 and 16 of the Natural Gas Act); *New England Divi-*

---

4. Declaration of Robert McPhail, ¶¶ 8–19.

5. Plaintiffs' Reply Brief at 11.

*sions Case*, 261 U.S. 184, 201–03, 43 S.Ct. 270, 277–78, 67 L.Ed. 605 (1923) (Transportation Act provisions giving the Interstate Commerce Commission authority to issue provisional orders altering rates pending full review). One District Court has found these precedents alone to be sufficient authority to support the imposition of interim rates under section 9(c) of the Reclamation Act. *Pacific Power & Light Co. v. Duncan*, 499 F.Supp. 672 (D.Or.1980).

Plaintiffs point out, correctly, that there are differences between government regulation of private utility rates and the government setting and collecting rates for the sale of surplus government power. They fail to demonstrate, however, why these differences preclude the Secretary from implying authority to set interim rates. CREDA and Provo state that the interim order power implied in the Natural Gas cases is essential to the regulatory commissions' "twin duties of protecting consumers while preserving the financial integrity of the regulated companies." *FPC v. Hope Natural Gas Company*, 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944). The Secretary, they argue, has no such function.[6] But the Secretary has a similar obligation, imposed by statute, to favor governmental and non-profit entities in the sale of power and at the same time insure a sufficient return to cover operation and maintenance costs, interest on the investment and "other fixed charges as the Secretary deems necessary." 43 U.S.C. §§ 485h(c), 620d(d). Moreover, the Secretary could set these rates directly, without substantive review by the FERC, and implement them immediately. Instead, he has attempted to provide power customers with the additional protection of review by the FERC, while at the same time assuring the fiscal integrity of the projects by providing for the collection of rates—subject to refund with interest—pending that review. While the precise relationships between the parties differ from those in the regulation of private utilities, the scheme adopted by the Secretary attempts to serve similar interests. The Or-

der and regulation providing for the collection of interim rates pending review are a proper exercise of the authority granted in 9(c) of the Reclamation Act.

■ There is an additional basis for the interim rate scheme. Power to collect interim rates also derives from the Secretary's authority to set terms for the sale of CRSP power. The sale of electric power from Bureau of Reclamation Projects is regarded as the sale of surplus government property. *Ashwander v. TVA*, 297 U.S. 288, 336, 56 S.Ct. 466, 478, 80 L.Ed. 688 (1936). The Secretary's authority to enter into contracts or leases for the sale of power is provided in section 9(c). That power to contract is limited only by the specific terms of the statute. As the Supreme Court pointed out in discussing the Secretary of the Interior's authority to allocate water from the Colorado River:

> The general authority to make contracts normally includes the power to choose with whom and upon what terms the contracts will be made. When Congress in an Act grants authority to contract, that authority is no less than the general authority, unless Congress has placed some limit on it.... [W]e are persuaded that had Congress intended ... to fetter the Secretary's discretion, it would have done so in clear and unequivocal terms ....

*Arizona v. California*, 373 U.S. 546, 580, 83 S.Ct. 1468, 1487, 10 L.Ed.2d 542 (1963). The Secretary has similarly broad authority to set the terms on the sale of power under the Reclamation Act. *See City of Santa Clara v. Andrus*, 572 F.2d 660, 667 (9th Cir. 1978). The Secretary may therefore require, as one of the terms of the sale of CRSP power, that interim rates be collected, subject to refund with interest.

■ The contractual nature of the relationship between the Secretary and CREDA members also defeats plaintiffs' claims that the Secretary cannot establish a procedure providing for refunds with interest. Relying on an impressive string of Supreme

---

**6.** Plaintiffs' Reply Brief at 11.

Court decisions, plaintiffs assert that the government cannot pay interest except where it is specifically authorized to do so by statute. The cases, however, recognize a second exception: the government may pay interest when it has explicitly contracted to do so. *United States v. Louisiana*, 446 U.S. 253, 264–65, 100 S.Ct. 1618, 1625–26, 64 L.Ed.2d 196 (1980); *United States v. Thayer-West Point Hotel*, 329 U.S. 585, 588–89, 67 S.Ct. 398, 399–400, 91 L.Ed. 521 (1947); 51 Comp.Gen. 251 (Oct. 27, 1971); *see* 28 U.S.C. § 2516(a). The Secretary thus has authority under his power to enter into contracts for the sale of CRSP power, to include a term providing for refunds with interest of any overcharges collected while the interim rates are in effect. This may be accomplished by promulgation of a regulation or order of general applicability to all contracts. *See DeMatteo Construction Co. v. United States*, 600 F.2d 1384, 1391 (Ct.Cl. 1979); *Chris Berg, Inc. v. United States*, 426 F.2d 314, 317 (Ct.Cl.1970); *G. L. Christian and Associates v. United States*, 312 F.2d 418, 427 (Ct.Cl.), *cert. denied*, 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963).

■ Finding a general power to collect interim rates does not necessarily mean that such rates may be collected immediately from all customers. The terms on which the Secretary sells CRSP power are governed by a contract. The Secretary may not alter its terms unless the alteration is specifically contemplated by the contract or by statute. *Associated Electric Cooperative, Inc. v. Morton*, 507 F.2d 1167, 1175 (D.C.Cir.1974); *Arkansas Power & Light Co. v. Schlesinger*, C.A.No. 79–1263 (D.D.C., Oct. 20, 1980).

■ In order to determine if the institution of the interim rate/refund procedure is within the contemplation of the contracts between the government and CREDA's members, it is important to focus on the effect of the interim rates. Charging WAPA customers increased rates on an interim basis means that the government collects a higher price for WAPA power over a longer period of time. This type of modification was expressly anticipated in the contracts between the government and CREDA members, which provide in relevant part:

> The rate schedule specified in this contract shall be subject to successive modification by the United States through the promulgation of superseding rate schedules. If at any time the United States promulgates a rate schedule superseding the rate schedule then in effect under this contract, it will promptly notify the contractor thereof. Said superseding rate schedule, as of its effective date, shall become effective unless the contractor . . . shall elect to terminate this contract . . . . [7]

The parties thus contemplated increased rates, even though they did not specifically address the interim rate procedure at issue here. The interim rate procedure, which merely spreads out payments over a longer period, can therefore be sustained as an alteration of existing rate schedules within the contemplation of the contract. *See Associated Electrical Cooperative, Inc. v. Morton*, 507 F.2d at 1174–76 (addition of a transmission charge sustained as within the Secretary's statutory and contractual power to set rates). Should the amount of the revenues generated under the new rate schedule be excessive under the statutory standards, plaintiffs are protected by their contractual right to refunds with interest. The alternative, setting a greater increase effective only after FERC review, has the disadvantage of an uncertain effective date subject to delays for the review process during which the government may be denied needed revenue.

In short, the Court finds that the Secretary had both the statutory and contractual right to establish interim rates, subject to refund with interest. Plaintiffs therefore cannot show the requisite likelihood of success on the merits and the motion for a preliminary injunction will be denied.

An appropriate Order accompanies this opinion.

---

7. Declaration of Robert McPhail, ¶ 21.